## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| MINTVEST CAPITAL, LTD.,<br><br>    Plaintiff,<br><br>        v.<br><br>NYDIG TRUST COMPANY, NYDIG MINING LLC, and STONE RIDGE HOLDINGS GROUP LP,<br><br>    Defendants. | Case No. 3:25-cv-01019-FAB-MEL |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Defendants NYDIG Trust Company LLC ("NYDIG Trust"), NYDIG Mining LLC ("NYDIG Mining"), and Stone Ridge Holdings Group LP ("Stone Ridge") (collectively, "Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiff Mintvest Capital Ltd.'s ("Mintvest") Motion for Leave to File an Amended Complaint (ECF 54).

## PRELIMINARY STATEMENT

Mintvest's existing complaint asserts frivolous claims and wrongly alleges that diversity exists when it does not. Now that Defendants have moved to dismiss and have identified the lack of diversity, Mintvest seeks to salvage its lawsuit by tacking on purported federal claims in order to manufacture subject-matter jurisdiction under 28 U.S.C. § 1331. But Mintvest's motion must be denied because (i) this Court does not have jurisdiction to entertain the request, (ii) the request is inexcusably untimely, (iii) even if it were properly before the Court, Mintvest's proposed new claims are devoid of merit, and (iv) in all events, the proposed new claims are an impermissible effort to relitigate a dispute that has already been resolved. The motion must be denied.

First, this Court does not have the authority to adjudicate Mintvest's motion because it lacks subject-matter jurisdiction over this case. In the operative complaint, Mintvest's sole alleged jurisdictional basis is diversity under § 1332—even though Mintvest did not adequately plead its

own citizenship or the citizenship of Defendants' members and partners, all of which are required for this Court to determine if diversity exists. By that measure alone, the lawsuit must be dismissed, given that Mintvest has failed to carry its burden of alleging facts supporting diversity.

But Defendants have also disclosed that they each have a partner or member, as applicable, that is a Delaware corporation (ECF 50), such that none of them is diverse from Delaware-based Mintvest. Because Defendants have "indicate[d] that there is no diversity of citizenship between the parties," the Court has directed them to submit a motion to dismiss on those grounds by May 21, 2025. (ECF 52.) Mintvest seeks to front-run that forthcoming motion with this present motion for leave to amend, but even an elementary review of the operative complaint and the parties' disclosures reveals this Court lacks diversity jurisdiction. Mintvest has not and cannot refute that basic fact, which is why it instead attempts to add federal claims. But that strategy cannot save it. As is the case with any motion, this Court can entertain a motion for leave to amend **only if** it has subject-matter jurisdiction over the dispute in the first place. Because the Court lacks jurisdiction, it therefore must dismiss the complaint under Federal Rule 12(b)(1) and deny Mintvest's motion for leave to amend as moot.

Second, even if this Court were able to adjudicate Mintvest's motion for leave to amend, the Court should deny it as untimely. The Court's Case Management Order is clear: "Any motion to amend pleadings or add parties **shall be filed by April 9, 2025**. The pleadings stage **must be concluded by that date**." (ECF 26 (emphasis added).) Mintvest missed that deadline without excuse, justification, or explanation. That provides a standalone basis to deny the requested leave.

Third, even if the Court considers the merits of Mintvest's Proposed First Amended Complaint ("PFAC"), Mintvest's motion should be denied as futile. The PFAC contains six proposed causes of action, and each fails to state a claim. Mintvest's putative securities law claims

under federal and Puerto Rico law (Counts I and VI) fail because Mintvest does not have standing to bring them. The PFAC does not allege that Defendants made any material misrepresentations to Mintvest, or that Mintvest purchased or sold securities in supposed reliance on any such misrepresentations. And Mintvest's proposed claim for unjust enrichment (Count II) is barred because Mintvest seeks overlapping statutory relief for the same alleged conduct. Mintvest's claim under 31 L.P.R.A. § 3374 (Count III) likewise fails because Mintvest does not and cannot allege that it is an express third-party beneficiary of the Coinmint acquisition. And Mintvest's remaining claims under Article 1489 and for unspecified "tort" liability (Counts IV and V) again are frivolous for the same reason Defendants have already explained in their pending motion to dismiss. (ECF 17 at 7–11.) As before, Mintvest cites zero legal support for its claim that Article 1489—which is a construction statute applying to laborers and materialmen—applies here, and Mintvest alleges no facts to support its "tort" claim for supposed reputational harm.

Finally, beyond failing to allege viable causes of action, the PFAC also fails on issue-preclusion grounds. The PFAC is an impermissible attempt to relitigate—yet again—the issue of Mintvest's alleged equity in Coinmint, which has already been resolved through a valid and binding final judgment in Texas. The motion must be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background Facts, Operative Complaint, and Prior Litigation

This lawsuit is not the first time that Mintvest has sought to extract money it is not entitled to because of a supposed equity interest in Coinmint. For efficiency and brevity, Defendants adopt the Statement of Facts contained in the NYDIG Defendants' Memorandum in Support of their Motion to Dismiss, which sets forth relevant factual background. (ECF 17 at 3–5).[1]

---

[1] *See* L. Civ. R. 7(f). Because of the several overlapping motions in this case, Defendants refer to other filings that are already before the Court when possible, with the goal of streamlining the issues for resolution.

### B. Procedural History

Mintvest filed its complaint on January 9, 2025, alleging a claim under Article 1489 of the Puerto Rico Civil Code ("Article 1489") and a claim for an unspecified "tort." (Compl., ECF 1, ¶¶ 20–31.) On March 10, Defendants filed motions to dismiss for lack of personal jurisdiction and failure to state a claim. (ECF 13, 17.) Mintvest then filed a motion for partial summary judgment. (ECF 20.) Those motions remain pending.

On March 12, 2025, the Court issued a Case Management Order ("CMO") pursuant to Rule 16(b). (ECF 26.) The CMO mandated, "Any motion to amend pleadings or add parties **shall be filed by April 9, 2025**. The pleadings stage must be concluded by that date." (ECF 26 at 2 (emphasis added).) Mintvest did not file any motion to amend its pleading by that deadline.

On April 3, 2025, Mintvest filed its corporate disclosure statement, but failed to properly identify its own citizenship, as it did not identify its principal place of business. (ECF 49.) Defendants filed an initial disclosure statement on April 4 (ECF 50)—which in part objected to Mintvest's disclosures—and an amended disclosure statement on April 21 (ECF 51). That disclosure identified that each Defendant is a citizen of Delaware, such that, even in the absence of proper disclosure by Mintvest, it had become apparent that none of Defendants were diverse from Mintvest, such that this Court lacks subject-matter jurisdiction. (*Id.* ¶¶ 1–3, 9–10, 16–17.)

On April 22, the Court directed Defendants "to file a motion to dismiss or for summary judgment as to the diversity issue" by May 21. (ECF 52.) Defendants' motion is forthcoming. In an effort to front-run that motion, Mintvest filed the instant motion for leave to amend the complaint on the next day, April 23. (ECF 54.)

### C. Mintvest's Futile Proposed First Amended Complaint

In connection with its motion for leave to amend, Mintvest included its Proposed First Amended Complaint ("PFAC"). (ECF 54-1.) The PFAC proposes to: (i) change the basis for this

Court's subject-matter jurisdiction; (ii) add new defendants; (iii) assert new causes of action; and (iv) add certain new factual allegations.

Most notably, the PFAC seeks to change the basis of this Court's subject-matter jurisdiction from diversity jurisdiction to federal-question jurisdiction. (PFAC ¶ 9.) Indeed, the PFAC does not allege the existence of diversity jurisdiction, which is itself a concession that no such jurisdiction has ever existed in this case. The PFAC also proposes adding three new defendants: (i) New York Digital Investment Group LLC ("NYDIG LLC"), (ii) New York Life Insurance and Annuity Corporation, and (iii) Moses Merger Sub. (*Id.* ¶¶ 5–7.)[2] And the PFAC proposes to add four new claims in addition to the existing claims for "tort" and violation of Article 1489: (i) federal securities fraud; (ii) unjust enrichment; (iii) violation of 31 L.P.R.A. § 3374; and (iv) violation of the Uniform Securities Act of Puerto Rico. (*Id.* ¶¶ 25–65.)

The proposed factual allegations in the PFAC are virtually identical to the operative complaint. The only new facts are as follows: *First*, Mintvest alleges that "Mr. Burandt purposely misled Mr. Leary" as to the purpose of their meeting "in order to defraud Mintvest" and "gain information on the Coinmint litigation as part of the due diligence for the purchase of Coinmint." (*Id.* ¶¶ 19–20.) *Second*, Mintvest alleges that Coinmint was acquired on June 30, 2024. (*Id*. ¶¶ 18.) *Third*, Mintvest gives contrary accounts of which entity acquired Coinmint. (*Id.* ¶ 21.) On the one hand, Mintvest again alleges that NYDIG Trust "purchased" Coinmint. (*Id.*) But, later in the PFAC, Mintvest instead states that (a) Coinmint was not purchased, but rather merged with Moses Merger Sub, "a wholly owned subsidiary" of NYDIG LLC, (b) Coinmint survived the Merger and

---

[2] NYDIG Trust, NYDIG Mining, Stone Ridge, NYDIG LLC, New York Life Insurance and Annuity Corp., and Moses Merger Sub are referred to collectively as the "PFAC Defendants."

was subsequently renamed Energy & Compute, LLC, and (c) the surviving entity is now owned by NYDIG LLC. (*Id.* ¶ 29.) Mintvest does not reconcile these contradictory assertions.

## <u>ARGUMENT</u>

### I. MINTVEST'S MOTION MUST BE DENIED BECAUSE THIS COURT DOES NOT HAVE SUBJECT-MATTER JURISDICTION TO ADJUDICATE IT

Mintvest's motion must be denied because the Court lacks subject-matter jurisdiction over this action, and therefore cannot adjudicate the motion. A motion for leave to amend "necessarily implicates a district court's authority to grant or deny the motion." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 95 (1st Cir. 2008). This "authority" includes whether the Court has subject-matter jurisdiction over the dispute, because "a court without subject matter jurisdiction lacks authority to grant a party's amendment motion." *Saxon Fibers, LLC. v. Wood*, 118 F. App'x 750, 752 (4th Cir. 2005). When a plaintiff seeks "leave of court to amend a complaint to allege [federal question jurisdiction] not previously pled," the existence of subject-matter jurisdiction is determined by whether the court **already** has "[diversity] jurisdiction over the **original** complaint." *Id.* (emphasis added). Thus, courts first "consider any threshold jurisdictional concerns raised by the parties before ruling on the motion" for leave to amend. *Connectu LLC*, 522 F.3d at 95–96.[3]

Thus, when a plaintiff seeks to amend to change the jurisdictional basis from diversity to federal-question, the plaintiff must first demonstrate that the Court has subject-matter jurisdiction over the original complaint. *See Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) ("[T]he party invoking subject matter jurisdiction has the burden of proving by a preponderance

---

[3] This stands in contrast to situations in which a plaintiff may amend its complaint as of right. When an amended complaint is filed as of right, it immediately becomes operative because "the Civil Rules operate mechanically, and the judge's authority over the case is not brought to bear. In that event, the absence of federal subject matter jurisdiction in the original complaint will pose no obstacle to the consideration of an amended complaint." *Connectu LLC*, 522 F.3d at 96. Here, however, Mintvest seeks this Court's leave to amend because it is out of time to amend as of right. Under Fed. Civ. P. 15(a)(1), Mintvest had until March 31, 2025, which is 21 days after Defendants served their motions to dismiss, to amend its complaint as of right. That deadline was extended by the Court's CMO until April 9, 2025. (ECF 26 at 2.) But Mintvest missed both deadlines.

of the evidence the facts supporting jurisdiction[.]" (alterations omitted)). If a court lacks jurisdiction over the original complaint, the case must be dismissed and leave to amend denied. *Saxon Fibers, LLC*, 118 F. App'x at 752 (affirming denial of leave to amend where plaintiff sought to shift basis of jurisdiction from diversity to federal-question, but the original complaint failed to adequately allege diversity). This requirement is well-established under federal law. *E.g.*, *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 895 (6th Cir. 2020) ("[S]everal circuit courts have noted that parties may not substitute new causes of action to allege federal-question jurisdiction" when diversity jurisdiction is lacking.) (collecting cases).[4]

Here, Defendants have raised a jurisdictional challenge by stating in their corporate disclosure statement, "[Defendants are] not diverse from Plaintiff Mintvest . . . . This action must therefore be dismissed for lack of subject matter jurisdiction." (ECF 51 ¶¶ 4–5, 11–12, 18–19.) The Court then directed Defendants to file a motion on those grounds by May 21, 2025. (ECF 52.) Mintvest now seeks to front-run that motion with its present motion to amend, but to no effect, as Mintvest cannot establish that the Court ever had diversity jurisdiction over the original complaint.

A basic review of Mintvest's initial complaint and the parties' disclosures reveals that this Court lacks diversity jurisdiction over this action, such that it never should have been filed.[5] In its

---

[4] *E.g.*, *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (affirming denial of leave to amend where the plaintiff sought "not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist"); *Cliffs Nat. Res. Inc. v. Seneca Coal Res., LLC*, 2018 WL 2012900, at *5 (D. Del. Apr. 30, 2018) ("Because federal diversity jurisdiction does not exist, I have no jurisdiction to consider Plaintiffs' Motion [for leave to amend]."); *Wong v. Colvin*, 2014 WL 4230079, at *4–5 (D. Or. June 10, 2014) ("Because plaintiffs cannot establish diversity jurisdiction under the original Complaint, this court cannot grant them leave to amend to allege federal question jurisdiction."); *Asset Value Fund Ltd. P'ship v. The Care Grp., Inc.*, 179 F.R.D. 117, 119 (S.D.N.Y. 1998) (rejecting leave to amend where the plaintiff "concedes that there is no diversity among the parties; thus its motion to add a federal securities fraud claim seeks not to correct a defect in the allegation of extant and otherwise valid jurisdictional facts, but to add an entirely new cause of action, based on facts not alleged in the original complaint, to create a different basis for federal subject matter jurisdiction"), *aff'd*, 182 F.3d 898 (2d Cir. 1999).
[5] Defendants adopt Part II of the Argument Section contained in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment. (ECF 55 at 5–6.)

operative complaint, Mintvest's sole alleged basis for jurisdiction is diversity under § 1332; it neither alleges a federal cause of action nor does it assert federal question jurisdiction. (ECF 1 ¶ 6.) But Mintvest's invocation of § 1332 is without basis because the parties lack complete diversity.

For purposes of diversity jurisdiction, the citizenship of an LLC (like Defendants NYDIG Mining and NYDIG Trust) or a limited partnership (like Defendant Stone Ridge) "is determined by the citizenship of all of its members" or all its partners. *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006). As Defendants have disclosed, one of Stone Ridge's limited partners is a Delaware corporation, such that Stone Ridge is a citizen of Delaware. (ECF 51 ¶ 2.) And because Stone Ridge is a member of the of the chain of LLCs that owns NYDIG Trust and NYDIG Mining, NYDIG Trust and NYDIG Mining are also Delaware citizens. (*Id.* ¶¶ 9, 16); *see also BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 696 (1st Cir. 2023) ("[A] party must trace the citizenship of any member that is an unincorporated association through however many layers of members or partners there may be[.]" (quotations omitted)). As all parties are citizens of Delaware, no diversity exists. *See Renaissance Mktg., Inc. v. Monitronics Int'l, Inc.*, 606 F. Supp. 2d 201, 207 (D.P.R. 2009) ("[T]he court loses its subject matter jurisdiction if any plaintiff is a citizen of the same state as any defendant.").

This case must therefore be dismissed for lack of subject-matter jurisdiction, and Mintvest's motion for leave to amend must be denied. *See Chardon-Dubos v. Biden*, 2024 WL 4373386, at *5 (D.P.R. Sept. 1, 2024) ("Where Rule 12(b)(1) dismissal for want of subject-matter jurisdiction is appropriate, the motion for leave to amend is futile and will be dismissed.").

## II. MINTVEST'S MOTION SHOULD BE DENIED BECAUSE IT IS BARRED BY THE COURT'S SCHEDULING ORDER

Mintvest's motion should also be denied because it violates this Court's Case Management Order without justification or cause. The CMO is clear: "Any motion to amend pleadings or add

parties **shall be filed by April 9, 2025**. The pleadings stage **must be concluded by that date**." (ECF 26 at 2 (emphasis added).) Mintvest missed the deadline by two weeks; on that basis alone, its motion should be denied. Mintvest offers no explanation for its untimeliness. It instead inexplicably denies the existence of the CMO, stating, "In the instant case, no scheduling order has been entered to date." (ECF 54 ¶ 2.) Mintvest takes this position despite the fact that **Mintvest itself** filed an objection pursuant to the same CMO that it now claims has not been entered. (ECF 33.) Mintvest is wrong. And as this Court has ruled in similar circumstances, when "it is incontrovertible that, in the case management order, [the] court set a deadline to file amended pleadings," contending that those deadlines do not apply is "beyond the pale, bordering on Rule 11 sanctions." *Gonzalez v. Hurley Int'l LLC*, 2012 WL 1577572, at *2 (D.P.R. May 4, 2012).

Because the CMO's amendment date has passed, that deadline may now be modified "'only for good cause and with the judge's consent.'" *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.,* 714 F.3d 62, 64 (1st Cir. 2013) (quoting Fed. R. Civ. P. 16(b)(4)). Mintvest does not address—let alone does it meet—this elevated good-cause standard, nor does it otherwise offer any justification or excuse for its untimely filing or explain why it could not have sought amendment sooner. *See Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019); *see also Gonzalez*, 2012 WL 1577572, at *2 ("[I]t should go without saying that duty to request an extension of time to file amended pleadings rests squarely on the plaintiff.").

Further, although Mintvest claims the PFAC is in part based on the Coinmint Merger Agreement (ECF 54 ¶¶ 3–6), Defendants filed that agreement on March 10, 2025 (ECF 19-1)— **30 days** before the April 9 deadline. Mintvest had plenty of time to comply. Mintvest's motion should therefore be denied. *See, e.g.*, *Somascan*, 714 F.3d at 64 (affirming denial of leave to amend where plaintiff "failed to explain its reasons for not requesting leave to amend earlier"); *Puerto*

*Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, 104 F. Supp. 3d 196, 200 (D.P.R. 2015) (denying leave to amend where plaintiff made "no attempt to demonstrate that good cause justifies amending its complaint").

## III.   ALTERNATIVELY, MINTVEST'S MOTION SHOULD BE DENIED AS FUTILE

If the Court does consider the merits of the PFAC, it should deny Mintvest's motion as futile because the PFAC "would fail to state a claim upon which relief could be granted." *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Futility is "gauged by reference to" the Rule 12(b)(6) standard. *Rivera-Fuentes v. Kijakazi*, 651 F. Supp. 3d 482, 486 (D.P.R. 2023). In this case, none of Mintvest's six proposed causes of action state a valid claim.

### A.   The PFAC Fails to State a Securities Claim Under Federal Law (Count I)

The PFAC first seeks to add a claim for federal securities fraud under Section 10(b) and Rule 10b–5 of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). To state a Section 10(b) claim, Mintvest must sufficiently allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *In re Bos. Sci. Corp. Sec. Litig.,* 686 F.3d 21, 27 (1st Cir. 2012). Such claims are subject to "heightened pleading requirements" and, therefore, "a complaint alleging securities fraud must specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Corbel Distressed & Special Opportunities Fund, L.P. v. Benveniste Londono*, 2024 WL 5400720, at *4 (D.P.R. July 19, 2024) (quotations omitted). The PFAC falls far short of this stringent pleading standard.

To start, Mintvest lacks standing to sue the PFAC Defendants under the PSLRA. A § 10(b) plaintiff "has standing to challenge only those alleged misrepresentations upon which he reasonably relied in purchasing or selling his stock." *In re Bank of Bos. Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991). Here, the PFAC does not allege that Mintvest engaged in **any**

**transaction** for the purchase or sale of securities. Instead, Mintvest asserts only that it was an equityholder in Coinmint. (PFAC ¶ 11.) This alone is fatal, as there is "no private right of action under Rule 10b-5 for mere holders of securities" like Mintvest. *See Angelos v. Tokai Pharms., Inc.*, 494 F. Supp. 3d 39, 55 (D. Mass. 2020). This PSLRA claim is therefore futile. *See also Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) (holding that a misrepresentation under the PLSRA must make "a significant difference to someone's decision **to purchase or to sell** a covered security" (emphasis added)); *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 417 (2d Cir. 2011) ("[T]here is no 'holder' claim under federal securities law.").

Mintvest fares no better with respect to the remaining required elements. First, it does not allege any material misrepresentations or omissions. The PFAC alleges only that the PFAC Defendants failed to "disclose their plans to acquire Coinmint without compensating Mintvest." (PFAC ¶ 32.) That is not a viable "omission." An omission is actionable under Rule 10b-5 "only when there is an affirmative duty to disclose"—and Mintvest sets forth no allegations or factual support indicating that the PFAC Defendants had a duty to disclose anything to Mintvest regarding the Coinmint acquisition. *See Ponsa-Rabell v. Santander Sec., LLC*, 2020 WL 5413620, at *6 (D.P.R. June 5, 2020), *R&R adopted* 2020 WL 4219685 (D.P.R. July 22, 2020), *aff'd* 35 F.4th 26 (1st Cir. 2022). Indeed, such a duty is markedly absent here, given that Mintvest no longer held any equity interest in Coinmint by the time the Coinmint acquisition took place in June 2024. (PFAC ¶ 21); *see Mintvest Cap., Ltd. v. Coinmint, LLC*, 693 S.W.3d 834 (Tex. App. 2024) (holding Mintvest held no interest in Coinmint). Mintvest does not explain why the PFAC Defendants owed a "duty" of any sort to a company that was not an equityholder.

Second, the PFAC fails to adequately plead scienter. The PSLRA requires plaintiffs to plead "with particularity facts giving rise to a strong inference that the defendant acted with"

scienter. *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 613 (1st Cir. 2017) (citations omitted). "Scienter" is a "conscious intent to deceive or defraud investors by controlling or artificially affecting the price of securities." *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 240 (1st Cir. 2015) (quotations omitted). Here, Mintvest does not allege any facts supporting its conclusory scienter allegations, let alone does it plead any such facts with particularity. Instead, it states only that the PFAC Defendants took "actions with scienter" or "acted with scienter"—it says nothing to support the notion that the PFAC Defendants had a "conscious intent to deceive or defraud." (PFAC ¶¶ 30, 33.) These allegations are plainly insufficient.

The third and fourth elements are equally unmet, as the PFAC fails to allege that any supposed misstatement or omission was made in connection with "the purchase or sale of a security" or that Mintvest relied on such misstatement or omission in buying or selling. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). Such reliance is typically demonstrated by showing that the plaintiff "was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Id.* Here, Mintvest cannot possibly satisfy these elements because Mintvest concededly did not buy or sell anything, nor does it identify any "specific misrepresentation" or omission or show that Mintvest engaged in a transaction based on that "specific misrepresentation" or omission. *See id.*

Fifth, the PFAC also fails to plausibly allege economic loss. Although the PFAC claims that Mintvest held an 18.2% stake in Coinmint and was not properly compensated, that allegation is contrary to the established record. By the time the Coinmint acquisition took place in June 2024 (PFAC ¶ 21), Mintvest no longer held any equity interest in Coinmint. *Mintvest Cap., Ltd. v.*

*Coinmint, LLC*, 693 S.W.3d 834 (Tex. App. 2024) (holding Mintvest held no interest in Coinmint). Including an allegation that is refuted by a published court decision does not plausibly allege loss.

Sixth and finally, the PFAC fails to adequately plead loss causation. Mintvest alleges that the PFAC Defendants were "a legal cause" of Mintvest's supposed injury because (i) Mr. Leary informed Mr. Burandt in May 2023 that Mintvest owned 18.2% equity in Coinmint, but (ii) a year later, in June 2024, the PFAC Defendants, supposedly with that knowledge, failed to compensate Mintvest for its interest. (PFAC ¶¶ 8, 18–21.) This "causation" theory fails because it does not actually show how anything the PFAC Defendants did caused harm to Mintvest—all it does is repackage the allegation that Mintvest purportedly should have received payment. But it also fails because, between those two dates—on March 12, 2024—the Texas Court of Appeals ruled that Mintvest had been bought out and no longer owned any equity in Coinmint. *Mintvest Cap.,* 693 S.W.3d at 845. Whatever "causation" may have otherwise existed was overcome by the Texas court's decision finally resolving the issue by ruling Mintvest had no interest in Coinmint.

The PFAC fails to state a federal securities claim, and the motion should be denied.

### B. Because the PFAC Fails to State a Federal Securities Claim, Mintvest's Motion Must Be Denied for Lack of Subject-Matter Jurisdiction

If the Court finds that the PFAC's proposed federal securities claim is futile, Mintvest's motion for leave to amend must be denied in full because the remaining proposed claims do not provide any basis for federal subject-matter jurisdiction. The PFAC's sole alleged basis for jurisdiction is federal-question jurisdiction under § 1331, and the proposed federal securities claim is the only federal claim. (PFAC ¶ 9.) Where a plaintiff does not have "a claim grounded in a federal question," leave to amend should be denied and "the Court should simply dismiss." *Joia v. Jozon Enters., Inc.*, 2019 WL 1226986, at *7 (D.R.I. Mar. 13, 2019).

### C. The PFAC Fails to State a Claim for Unjust Enrichment (Count II)

If the Court does consider the remaining claims, it should find they are likewise futile.

Mintvest's proposed claim for unjust enrichment is futile because it is based on the same alleged conduct as Mintvest's proposed securities claims. (*See* PFAC ¶¶ 39–45.) A claim for unjust enrichment is "subsidiary to other remedies provided by law" and it is "unavailable if the plaintiff may seek other forms of relief." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 578 F. Supp. 3d 267, 296 (D.P.R. 2021), *aff'd*, 54 F.4th 42 (1st Cir. 2022). As a result, "when a plaintiff alleges conduct that is covered by an applicable statute . . . it is inappropriate to allow a claim for unjust enrichment." *Id.* This is true "**even if** plaintiffs have failed to sufficiently allege that [statutory] claim." *Id.* (emphasis added). Here, Mintvest alleges the PFAC Defendants' conduct is governed by both federal and Puerto Rico statutes. (PFAC ¶¶ 25–38, 46–65.) Mintvest therefore "may not also state a claim for unjust enrichment." *See In re Fin. Oversight*, 578 F. Supp. 3d at 296.

### D.  The PFAC Fails to State a Claim Under 31 L.P.R.A. § 3374 (Count III)

Mintvest's proposed claim under 31 L.P.R.A. § 3374 fares no better. The PFAC conclusorily asserts that Mintvest is a third-party beneficiary to the Coinmint merger agreement, such that Mintvest is entitled to a "cash payout of the acquisition price." (PFAC ¶¶ 48–49.) But under § 3374 itself, a "stranger to a contractual relationship . . . may demand the fulfillment of a contract successfully **only if** the contract contains a stipulation in his favor, and **only if** the stranger has given notice of acceptance to the person bound prior to revocation." *Cruz Berrios v. Accreditation Council for Grad. Med. Educ.*, 218 F. Supp. 2d 140, 143 (D.P.R. 2002) (emphasis added). Neither of those conditions are satisfied here, and Mintvest does not allege to the contrary.

Further, to state a claim under § 3374, it is "not sufficient that the performance of [the contract in question] **may** benefit a third person"; instead, that contract "must have been entered into by the parties **for the direct benefit of the third person**." *Id.* (emphasis added). There is no question that Mintvest cannot satisfy this requirement either. The proposed § 3374 claim is futile.

### E.  The PFAC Fails to State a Claim Under Article 1489 (Count IV)

This claim is likewise futile. Defendants therefore adopt Parts IV and V of the Argument Section contained in the NYDIG Defendants' Motion to Dismiss Brief. (ECF 17 at 7–10.)

### F.  The PFAC Fails to State a "Tort" Claim (Count V)

This claim is likewise futile. Defendants adopt Part VI of the Argument Section contained in the NYDIG Defendants' Motion to Dismiss Brief. (ECF 17 at 10–11.)

### G.  The PFAC Fails to State a Claim Under Puerto Rico Securities Law (Count VI)

The PFAC's final proposed claim under the Uniform Securities Act of Puerto Rico ("PRUSA") is similarly futile. The PRUSA "is for all practical purposes a verbatim repetition" of the federal PLSRA and, therefore, Mintvest's PRUSA claim fails for the same reasons as does its Rule 10b-5 claim. *See SDM Holdings, Inc. v. UBS Fin. Servs., Inc. of P.R.*, 2016 WL 9461324, at *9 (D.P.R. Mar. 1, 2016), *R&R adopted* 2016 WL 9460664 (D.P.R. Sept. 30, 2016).

### H.  The PFAC Should Be Rejected on Res Judicata Grounds

Finally, the PFAC is the latest effort by Mintvest to secure payments it is not entitled to. This Court should not permit that effort to continue, given that Mintvest's rights have been finally adjudicated by the Texas Court of Appeals. Defendants adopt Parts VII and VIII of the Argument Section contained in the NYDIG Defendants' Motion to Dismiss Brief. (ECF 17 at 11–14.)

<u>CONCLUSION</u>

For these reasons, the Court should deny Mintvest's motion for leave to amend.

**WE HEREBY CERTIFY** that, on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to attorneys of record for the parties.

**RESPECTFULLY SUBMITTED** on May 7, 2025.

> *Counsel for Defendants NYDIG Trust Co.,*
> *NYDIG Mining LLC, and Stone Ridge*
> *Holdings Group LP*



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
vacevedo@cstlawpr.com
ndelnido@cstlawpr.com

*s/JUAN J. CASILLAS AYALA*
USDC-PR No. 218312

*s/VÍCTOR O. ACEVEDO HERNÁNDEZ*
USDC-PR No. 227813

*s/NATALIA E. DEL NIDO RODRÍGUEZ*
USDC-PR No. 301410

*/s/ John Arrastia*
John Arrastia, Esq. (*Pro Hac Vice*)
**CONTINENTAL PLLC**
255 Alhambra Cir. Suite 640
Coral Gables, FL 33134
Tel: 305-677-2707
JArrastia@continentalpllc.com