IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MINTVEST CAPITAL, LTD.,**<br>Plaintiff,<br><br>v.<br><br>**NYDIG TRUST COMPANY; NYDIG MINING LLC; and STONE RIDGE HOLDINGS GROUP, LP,**<br>Defendants. | CIVIL NO. 25-1019 (FAB-MEL) |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

Defendants NYDIG Trust Company LLC ("NYDIG Trust"), NYDIG Mining LLC ("NYDIG Mining" and, with NYDIG Trust, the "NYDIG Defendants"), and Stone Ridge Holdings Group, LP ("Stone Ridge"), through their undersigned counsel, respectfully submit this reply memorandum of law[1] in further support of their motions to dismiss the Complaint filed by Plaintiff Mintvest Capital Ltd. ("Mintvest") pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim.[2]

### PRELIMINARY STATEMENT

Mintvest's opposition to Defendants' motions to dismiss fails to address, let alone contest, the majority of the jurisdictional and substantive defenses raised by Defendants, all of which warrant dismissal of the action. Mintvest's opposition completely ignores: (1) NYDIG Mining and Stone Ridge's defense that this Court lacks personal jurisdiction over those Defendants; (2) NYDIG Mining and Stone Ridge's defense that the Complaint lacks a single

---

[1] Defendants filed separate motions to dismiss. Mintvest filed a single brief in opposition to both motions, so Defendants likewise file a combined brief to respond to Mintvest's opposition as efficiently as possible.

[2] The Court lacks subject matter jurisdiction because complete diversity does not exist between the parties. (*See* Defendants' Amended Corporate Disclosures, Dkt. 50.) Defendants will file their motion to dismiss on those grounds as the Court has directed.

1

allegation that NYDIG Mining or Stone Ridge participated in the Coinmint transaction or that Stone Ridge can be held liable for the actions of its subsidiary NYDIG Trust; and (3) Defendants' defense that Mintvest has no equity interest in Coinmint because that issue was specifically litigated to a final, binding judgment in Texas, in which the Texas court authorized the repurchase of Mintvest's equity interest, such that Mintvest has no equity in Coinmint. By failing to address these defenses, Mintvest has conceded their merits, and its claims must be dismissed.

Mintvest does respond to two of Defendants' arguments: (1) Mintvest has failed to allege a single *fact* in support of its tort claim, and (2) Article 1489 of the Puerto Rico Civil Code, 31 LPRA § 413, is inapplicable to this action. But Mintvest's responses are without merit. With respect to the tort claim, Mintvest's only rejoinder is that it is not required to comply with the heightened pleading standard of Rule 9(b) when pleading a tort claim. That is true but entirely irrelevant. Rule 8 (not Rule 9(b)) requires Mintvest, like any plaintiff, to allege *facts* that would permit the Court to draw a reasonable inference that Defendants are liable for the alleged misconduct, and Mintvest does not challenge that it has asserted zero facts in support of its tort claim. In response to Defendants' argument that Article 1489—which applies to subcontractors, contractors, and owners of construction projects—has no application here, Mintvest's retort comes down to an argument that the statute somehow applies "in spirit." That is not how statutory law works. Mintvest cites no cases in support of its contention, and the unambiguous language of Article 1489 shows that Mintvest's invented theory fails.

For all these reasons, Mintvest's Complaint should be dismissed in its entirety.

## ARGUMENT

I.  **THE COURT SHOULD DISMISS THE CLAIMS AGAINST NYDIG MINING AND STONE RIDGE FOR LACK OF PERSONAL JURISDICTION**

As set forth in Defendants' moving briefs, the Complaint does not allege that either NYDIG Mining or Stone Ridge had any contacts with Puerto Rico whatsoever, let alone the minimum contacts necessary for this Court to exercise personal jurisdiction over them. (Dkt. 17 ("NYDIG Br.") at 6; Dkt. 20 ("SR Br.") at 3–4.) The Complaint must therefore be dismissed as against NYDIG Mining and Stone Ridge for lack of personal jurisdiction. (NYDIG Br. at 6; SR Br. at 3–4.)

Mintvest's opposition does not address, let alone contest, its complete failure to include a single jurisdictional allegation against either NYDIG Mining or Stone Ridge, and it makes no attempt to argue that the Court has personal jurisdiction over either defendant. Mintvest's "failure to oppose specific arguments in [this] motion to dismiss results in waiver of those issues." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F. Supp. 2d 131, 152 (D. Maine 2006) (citing *Collins v. Marina-Martinez*, 894 F.2d 474, 481 n.9 (1st Cir. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by any effort at developed argumentation are deemed waived.")). Because Mintvest waived the issue, the Complaint must be dismissed as against NYDIG Mining and Stone Ridge.

## II. THE COURT SHOULD DISMISS THE COMPLAINT AGAINST ALL DEFENDANTS FOR FAILURE TO STATE A CLAIM

Defendants established in their moving briefs that the Complaint lacks any allegations that NYDIG Mining or Stone Ridge participated in the Coinmint transaction or that Stone Ridge can be held liable for the actions of its subsidiary, NYDIG Trust. (NYDIG Br. at 6-7; SR Br. at 4–5.) Mintvest fails to address these arguments and has therefore "waived [its] right to object to the claims' dismissal" on this ground. *Murphy v. Franklin Pierce Law Ctr.*, 882 F. Supp. 1176, 1182 (D.N.H. 1994); *see also Collins*, 894 F.2d at 481 n.9; *In re Compact Disc*, 456 F. Supp. 2d

at 152. The Complaint must be dismissed as against NYDIG Mining and Stone Ridge on this ground as well.

With respect to NYDIG Trust, as set forth in the NYDIG Defendants' moving brief (NYDIG Br. at 11–12), and as Mintvest now concedes, NYDIG Trust did not purchase Coinmint. (Opp. at 9 ("In June 2024, Coinmint was acquired through a merger with New York Digital Investment Group LLC."). The Complaint does not allege any other basis for liability against NYDIG Trust, such that the claims against NYDIG Trust must likewise be dismissed on this ground.

### III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY ARE BARRED BY ISSUE PRECLUSION

As set forth in the Defendants' moving briefs, the issue of Mintvest's purported ownership interest in Coinmint was decided by a final, binding judgment in Texas and the Complaint must therefore be dismissed on issue preclusion grounds. (NYDIG Br. at 13–14; SR Br. at 6.) As with the majority of the other arguments in Defendants' moving briefs, Mintvest wholly ignores this argument, and therefore concedes the issue. *Murphy*, 882 F. Supp. at 1182 ; *Collins*, 894 F.2d at 481 n.9; *In re Compact Disc*, 456 F. Supp. 2d at 152.

### IV. MINTVEST'S CLAIM UNDER ARTICLE 1489 SHOULD BE DISMISSED AGAINST ALL DEFENDANTS

As set forth in the Defendants' moving briefs, Article 1489 of the Puerto Rico Civil Code—which provides that "[t]hose who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought"—has no application to this action, which involves no contractor, subcontractor, or owner of a construction project, but rather the sale of a bitcoin mining company. (NYDIG Br. at 7–8; SR Br. at 5.) Defendants' briefs also show that,

4

even if Article 1489 did apply, Mintvest wholly fails to state a claim under the statute. (NYDIG Br. at 8–10; SR Br. at 5.)

In opposition, Mintvest claims that the statute does apply, because "Puerto Rico courts have recognized that [the] underlying policy [of Article 1489] extends to analogous situations where one party wrongfully receives payment owed to another." (Opp. at 12.) But, incredibly, Mintvest does not cite a single case in which a Puerto Rico court held that Article 1489 applies to a situation other than where a subcontractor seeks payment from the owner of a construction project, and the sole case relied on by Mintvest, *Goss, Inc. v. Dycrex Construction Co.*, 141 D.P.R. 342 (1996), does *not* apply Article 1489 to an "analogous situation." The issue in *Goss* was whether a subcontractor's claim against the owner of a construction project accrues when a subcontractor seeks payment from the owner out of court, or whether it accrues solely when the subcontractor files a claim in court. *See id.* at 342. The *Goss* Court held that the claim accrues "as of the very moment on which the workers or materialmen claim their credit from the owner of the work, either in or out of court." *Id*. at 359. Nothing in *Goss* suggests, as Mintvest would have it, that Article 1489 applies to situations that are "analogous" to a corporate transaction. Rather, *Goss* applied Article 1489 to the factual situation specifically laid out in the statute—a subcontractor who sought payment directly from an owner of a construction project rather than from the contractor.

Further, despite the fact that *Goss* reaffirms the inapplicability of Article 1489 to the instant action, Mintvest argues that the case stands for the general proposition that Article 1489 "reflects broad principles of justice," and argues that in *Goss*, the Court "emphasized that the statute's purpose was to prevent unjust enrichment and ensure that the rightful party receives what it is owed." (Opp. at 12 (citing *Goss*, 141 D.P.R. at 359 n.2 & 357).) But *Goss* makes no

5

such generalized statement and does not endeavor to expand the reach of Article 1489 beyond the express language of the statute. Rather, *Goss* makes clear that the purpose of Article 1489 is to protect *workers* and *materialmen* specifically; the statute does not prevent unjust enrichment in general, but is meant to prevent *contractors* and *project owners* from being enriched at the expense of *workers*. *See, e.g.*, 141 D.P.R. at 357 ("This Court…believes that Civil Code sec. 1489's right of action to *workers and materialmen* is a legacy based on considerations of public policy, morals and equity…[I]t is unfair that the owner or contractor, or both, even by fraudulent conspiracy, may unlawfully enrich themselves *with the unpaid labor and contribution of the workers and materialmen*." (emphasis added; internal citations and quotation omitted)); *id.* at 359 n.2 ("The intent of the Legislative Assembly to thoroughly protect *the interests of the worker* evidences the capital importance and the principles of social justice embodied in" Article 1489) (discussing a related provision, 29 LPRA § 186 *et seq.*, "which gave *construction workers or employees* an opportunity to encumber" property with a lien up to the amount of their unpaid wages) (emphasis added). Mintvest's argument for a broad application of Article 1489 fails.

In a final, flawed effort to salvage its Article 1489 claim, Mintvest cites *Alonso Garcia v. S.L.G.*, 155 D.P.R. 91, 106 (2001), for the proposition that "Puerto Rico's Supreme Court has ruled that the spirit of the law is the best tool for determining the legislature's intent." (Opp. at 12.) This effort fails, as the *Alonso Garcia* Court said no such thing. Rather, the Court stated that, under the system of separation of powers in place in Puerto Rico, courts must respect the will of the legislature, even if they personally disagree with the wisdom of certain legislative acts, and may not interpret a law in a manner contrary to the legislature's intent. *Alonso Garcia*, 155 D.P.R. at 106. The Court did *not* state that the spirit of the law is the best way for the courts to determine the intent of the legislature. *Id.* Here, the clear letter of Article 1489 shows that it

6

applies only to contractors, subcontractors, and owners of construction projects. The statute simply does not apply to the facts of this case, and the claim must be dismissed.

Finally, Defendants further demonstrated in their moving briefs that, even if Article 1489 applied here, Mintvest failed to state a claim under the statute. (NYDIG Br. at 8–10; SR Br. at 5.) Mintvest entirely ignores this argument as well, such that its "failure to oppose [Defendants'] arguments" regarding Article 1489 "results in waiver of those issues." *In re Compact Disc*, 456 F. Supp. 2d at 152; *see also Collins*, 894 F.2d at 481 n.9; *Murphy*, 882 F. Supp. at 1182.

## V.   MINTVEST'S TORT CLAIM SHOULD BE DISMISSED AGAINST ALL DEFENDANTS

As set forth in Defendants' moving briefs, Mintvest fails to allege a single fact in support of its tort claim. (NYDIG Br. at 10-11; SR Br. at 5–6.) Its sole allegation in support of the claim is the wholly conclusory statement that "Defendants' actions of intentionally excluding payment to Mintvest has caused reputational harm in an amount not less than $5 million." (Compl. ¶ 31.) In its Opposition, Mintvest argues that "the particulars that Defendants are required [*sic*] are limited to cases alleging fraud" and that it has satisfied the Rule 8 requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." (Opp. at 7-8.) Mintvest is wrong.

It is true that Mintvest's tort claim is not subject to the heightened pleading standards of Rule 9(b), but that is irrelevant. The tort claim must be dismissed because it fails to meet the basic pleading standard of Rule 8, which requires a plaintiff to plead "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Mintvest's single allegation in support of the tort claim is nothing more than a conclusory statement of some (but not all) of the elements of the claim, and it contains *no factual content whatsoever*. Indeed,

7

Mintvest does not even identify what "tort" claim it seeks to bring. But even if it had, such "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements" that Mintvest purportedly suffered reputational damage "do not suffice." *Id.* The tort cause of action must therefore be dismissed. *Id.*

VI.  **PLAINTIFF'S ARGUMENTS ABOUT CLAIMS THAT ARE NOT ASSERTED IN THE COMPLAINT ARE IRRELEVANT AND SHOULD BE DISREGARDED**

Finally, much of Mintvest devotes much of its Opposition to arguing about causes of action that are not alleged in the Complaint. (*See* Opp. at 10–11 (arguing that Defendants violated the Securities Act); *id.* at 11 (arguing that Defendants unjustly enriched themselves); *id.* at 13 (arguing that Defendants violated 31 LPRA § 3374).) Arguments about causes of action that are not alleged in the operative complaint are not relevant on a motion to dismiss that complaint and should be disregarded. *See Berry v. Fed. Bureau of Investigation*, 2018 WL 708155, at *5 (D.N.H. Feb. 5, 2018) ("To the extent [plaintiff] intended to bring other claims not asserted in the complaint, those claims are not properly before the court and are not a basis for opposing the defendants' motion to dismiss."); *Passatempo v. McMenimen*, 2005 WL 1877146, at *2 (D. Mass. Aug. 3, 2005) ("What is tested on a motion to dismiss is *the complaint*, not arguments in a brief." (emphasis added)); *Foley v. Wells Fargo Bank, NA*, 772 F.3d 63, 71-72 (1st Cir. 2014) ("A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations *in the plaintiff's complaint* set forth a plausible claim upon which relief may be granted" (emphasis added; internal quotations omitted)).[3]

---

[3] Mintvest has filed a motion for leave to amend, seeking to add these causes of action and certain additional defendants to the Complaint. (*See* Dkt. 54.) As Defendants will show in opposition to that motion, leave should be denied because the claims are entirely frivolous and amendment would be futile.

## CONCLUSION

For the reasons set forth above and in their moving briefs, Defendants request that the Court enter an order dismissing the Complaint in its entirety and granting such other and further relief as the Court deems just and proper.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

**RESPECTFULLY SUBMITTED** San Juan, Puerto Rico, on June 11, 2025.



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
vacevedo@cstlawpr.com
ndelnido@cstlawpr.com

*s/**JUAN J. CASILLAS AYALA***
USDC-PR No. 218312

*s/**VÍCTOR O. ACEVEDO HERNÁNDEZ***
USDC-PR No. 227813

*s/**NATALIA DEL NIDO-RODRÍGUEZ***
USDC-PR No. 301410

*/s/ John Arrastia*
John Arrastia, Esq. (*Pro Hac Vice*)
**CONTINENTAL PLLC**
255 Alhambra Cir. Suite 640
Coral Gables, FL 33134
Tel: 305-677-2707
JArrastia@continentalpllc.com