IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MINTVEST CAPITAL, LTD.,**<br>Plaintiff,<br><br>v.<br><br>**NYDIG TRUST COMPANY; NYDIG MINING LLC; and STONE RIDGE HOLDINGS GROUP, LP,**<br>Defendants. | CIVIL NO. 25-1019 (FAB-MEL) |

**RESPONDENTS' OPPOSITION TO PLAINTIFF'S
"NOTICE OF VOID NOTICE OF DISMISSAL"**

**To the Honorable Court**:

DB Mtg. LLC, as Trustee ("DBM"), as purchaser and current owner of the rights to relief in this action, and Defendants NYDIG Trust Company LLC ("NYDIG Trust"), NYDIG Mining LLC ("NYDIG Mining"), and Stone Ridge Holdings Group LP ("Stone Ridge") (collectively, "Defendants") (collectively, where appropriate, "Respondents"), respectfully oppose Plaintiff's Notice of Void Notice of Dismissal (ECF No. 132), in compliance with the Court's Orders (ECF Nos. 133 & 139):

**Preliminary Statement**

Plaintiff's Notice of Void Notice of Dismissal ("Notice") lacks merit and is procedurally improper. To reach the Notice's core arguments, the Court must first confront, and resolve, a prevailing substantive reality: the lack of subject-matter jurisdiction due to incomplete diversity and Magistrate Judge Marcos E. López's recommendation to dismiss this case without leave to amend. As Defendants have often argued in their filings, **where subject-matter jurisdiction is lacking, dismissal remains the only alternative**, and the Court must decline to proceed any further. Tellingly, Mintvest concedes this point when it filed a separate lawsuit after Judge Lopez's

report and recommendation in an effort to manufacture a different basis for jurisdiction in Case No. 25-1346 (PAD), but Judge Pedro A. Delgado Hernández dismissed that case with prejudice.[1]

While Magistrate Judge Lopez's report and recommendation remained pending before this Court, Plaintiff lost its right to all the claims raised in this case because of a levy and sheriff's sale of these specific choses in action, conducted on September 10, 2025, pursuant to a writ of execution issued by the Circuit Court for Miami-Dade County, Florida, in *Coinmint LLC, et al. v. Prieur Leary, II, et al.* As a result, DBM purchased and now owns "all the right, title, and interest" of Prieur Leary III and Mintvest in claims asserted in: (1) this case, (2) Civil No. 25-1346 (PAD) ("Second Case") (dismissed); and (3) *New York Digital Investment Group LLC, et al. v. Mintvest Capital, Ltd.*, Case ID N25C-04-185 (Del. Super. Ct.) (collectively, the "Choses in Action," and the lawsuits reflecting them, the "Litigations"). For this reason, Plaintiff lacks standing, is not a real party in interest, cannot challenge who may dismiss the Choses in Action or how, and is not otherwise entitled to any relief under Fed. R. Civ. P. 25, 41, 60 ("Rule") or any other rule.

Plaintiff knew of the transfer of interest to DBM as early as October 29, 2025, when the appearing Defendants and other defendants in the Second Case filed their Motion to Dismiss Mintvest's amended complaint. Plaintiff, however, made a conscious decision to sit idle until Respondents filed the Stipulation of Dismissal ("Stipulation") and the Court entered Judgment dismissing the case (ECF Nos. 126 &129). Plaintiff then ignored the Court's order denying Plaintiff's Notice of Intent to Oppose the Stipulation (ECF Nos. 130 & 131) and filed the Notice addressed in this Opposition.

The Notice is a red herring: it recasts ordinary, non-jurisdictional procedural issues concerning substitution of parties and dismissal mechanics as supposed jurisdictional defects

---

[1] Defined *infra* as the "Second Case."

creating nullity or voidness in the Judgment. Plaintiff, in fact, doubles down on this strategy in the subsequently filed Motion to Vacate (ECF No. 134), where it mischaracterizes choice-of-law rules (*e.g.*, the internal affairs doctrine) as jurisdictional principles of constitutional importance to support an impermissible attack on a Texas state court final and binding judgment which plainly foreclosed Mintvest's right to seek any relief in this action since its inception.

Respondents request that the Court deny or disregard the arguments raised by Plaintiff in the Notice. Plaintiff raised the substantive challenges concerning the Court's Judgment in the Motion to Vacate, and they should be addressed, if at all, through that procedural vehicle.[2]

### Relevant Background Facts

Defendants filed three Motions to Dismiss for lack of subject-matter and personal jurisdiction and failure to state a claim under Rule 12(b)(1), 12(b)(2) and 12(b)(6), respectively. ECF Nos. 17, 20 & 63. As of June 23, 2025, Magistrate Judge Marcos E. López recommended dismissal for lack of diversity jurisdiction and, alternatively, failure to state a claim and lack of personal jurisdiction. ECF No. 99 ("R&R"). The matter remained fully briefed and ripe for adjudication for months. As previously explained (*see e.g.*, ECF No. 121), Plaintiff —knowing full well there is **no subject matter jurisdiction**— proceeded to file Civil No. 25-1346 (PAD) (the "Second Case") based on federal question jurisdiction through securities fraud and "RICO" claims. Defendants moved to dismiss that case as well and raised the lack of subject-matter jurisdiction and Plaintiff's lack of standing. *See* Civil No. 25-1346 (PAD), ECF No. 26.

As the motions to dismiss in this case and the Second Case remained pending, Respondents filed the Stipulation of Dismissal challenged by Mintvest. ECF No. 126. The Court swiftly entered Judgment dismissing the case with prejudice. ECF No. 129.

---

[2] Defendants may address some of the issues related to the Motion to Vacate here, without prejudice or waiver of their opportunity to fully respond and oppose said motion separately, as required by the Court.

### *State Court Final Judgments, Unreviewable by this Court Conclusively Refute Plaintiff's Arguments.*

Mintvest's post-Judgment arguments repeat the baseless claim that it owns (or owned) an 18.2% equity stake in Coinmint (now E&C) and is entitled to member rights, merger consideration, to prosecute such claims here, and to challenge the Judgment as the only party (plaintiff) in interest. That fundamental premise is directly negated by multiple state court final judgments and appeals. It is undisputed that on May 18, 2021, the Delaware Court of Chancery held Mintvest's membership in Coinmint had been diluted to 18.2%. *In re Coinmint, LLC*, No. 2019-0983-MTZ, 2021 WL 1996961, at *8 (Del. Ch. May 18, 2021). Plaintiff conveniently ignores subsequent proceedings that unequivocally decide that Mintvest has zero interest in Coinmint.

After the Delaware ruling, Coinmint exercised capital-call procedures under the Operating Agreement. Mintvest refused to meet the call. Coinmint and Coinmint Living Trust ("CLT") then sued in Texas pursuant to the Texas-venued operating agreement to enforce those repurchase rights. A copy of this complaint is attached as **Exhibit 1** and is available on Westlaw as follows: *Coinmint, LLC v. Mintvest Capital, Ltd.*, No. 2021-50413, 2021 WL 12258943 (Tex. Dist. Aug. 13, 2021). Mintvest elected not to answer and defaulted, and the Texas court entered a final judgment authorizing the buyout of Mintvest's entire minority interest in Coinmint at fair market value (the "Texas Judgment," a copy of which is attached as **Exhibit 2**). *See Coinmint, LLC v. Mintvest Capital, Ltd.*, No. 2021-50413, 2021 WL 12264655, at *1-2 (Tex. Dist. Nov. 22, 2021). The Texas Judgment set the buyout terms and converted Mintvest's position from equity to a money obligation, not ongoing membership. *See* Ex. 2, ¶ 2(e) (ruling that all of Mintvest's equity were redeemed). Coinmint deposited hundreds of thousands of dollars in escrow and executed a promissory note in favor of Mintvest consistent with the Texas Judgment. A copy of the Promissory

4

Note is attached as **Exhibit 3**. Defendants are not aware of any effort by Mintvest to collect the hundreds of thousands of dollars placed in escrow for the repurchased membership interests.

Mintvest decided it would appear post-judgment and it appealed that final Texas judgment. The Texas Court of Appeals affirmed the equity buyout on March 12, 2024 (the "Texas Affirmance," a copy is attached as **Exhibit 4**). *Mintvest Cap., Ltd. v. Coinmint, LLC*, 693 S.W.3d 834, 845 (Tex. App. 2024). As appellant in a plenary appeal, Mintvest had every opportunity to raise whatever challenges to the Texas court's jurisdiction or the equity buyout. But it never raised any of those challenges that it now seeks to raise before this Court.

The Texas court's enforcement track continued. On December 22, 2024, the Texas court issued an agreed judgment in garnishment ("Garnishment Judgment"), which confirmed satisfaction of the conditions precedent set by the Texas Judgment (*e.g.*, payment into escrow and the issuance of the Promissory Note) and further underscoring that Mintvest's equity had been converted to a money obligation—not ongoing membership. A copy of the Garnishment Judgment is attached as **Exhibit 5**.

### *The Acquisition was Based on the Sale of Coinmint's Equity Holders Interests, Which Did Not Include Mintvest.*

Once again, Plaintiff's Notice, as its prior and subsequent filings, deprives the Court of fundamental context concerning the June 30, 2024 acquisition in which NYDIG LLC (a non-party here) acquired 100 percent of Coinmint's equity through a merger transaction that extinguished all pre-merger membership interests. That transaction was memorialized in an Agreement and Plan of Merger (the "Merger Agreement"), a copy of which (with limited redactions for confidential business terms) was attached as Exhibit 1 of the NYDIG Defendants' Motion to Dismiss (ECF Nos. 17 and 19-1). Under the Merger Agreement, NYDIG LLC caused its wholly owned subsidiary, Moses Sub, to merge with and into Coinmint (the "Acquisition"). Upon closing, the

separate existence of Moses Sub ceased, and Coinmint continued as the surviving entity—thereafter renamed as E&C. *See* ECF No. 19-1, § 2.1. The Merger Agreement expressly provides that NYDIG LLC acquired 100 percent of the equity interests of Coinmint from the owners thereof (defined as 'Equityholders') in exchange for certain payments defined as Merger Consideration. Ex. 6 (First "Whereas" clause and Exhibit C to Merger Agreement); *id.* §§ 2.1(i), 2.1(ii), 2.2, 2.3, and 2.6. It further states that all limited liability company interests outstanding immediately prior to the effective time of the merger were cancelled and ceased to exist. Only those persons identified as "Equityholders" were entitled to receive Merger Consideration, and Mintvest was not among them. *See id.* §§ 2.1(ii),

### *Mintvest's Choses In Action in these Proceedings were Sold to DBM as Part of a Post-Judgment Execution in Florida*.

At the point that Respondents filed the Stipulation of Dismissal, Mintvest no longer held any interest in the claims asserted in this case. As noted, on September 10, 2025, following a levy and sheriff's sale conducted under a July 2, 2025 writ of execution issued by the Circuit Court for Miami-Dade County, Florida, in *Coinmint LLC, et al. v. Prieur Leary, II, et al.*, the Sheriff's Bill of Sale transferred to DBM, as Trustee, "all the right, title, and interest" of Prieur Leary III and Mintvest in the Choses in Action and the Litigations. A copy of the bill of sale is attached as **Exhibit 6**. As of that date, DBM—not Mintvest or Prieur Leary—is the real party in interest with exclusive ownership of the claims initially asserted by Mintvest here.

### Argument

### The Cart before the Horse:
### The Court Lacks Subject-Matter Jurisdiction Due to Incomplete Diversity

Plaintiff's Notice, like its Motion to Vacate, puts the cart before the horse by trying to secure procedural remedies that the Court does not have authority to issue or enforce due to the

6

absence of subject-matter jurisdiction. *See* R&R, ECF No. 99. Plaintiff ignores this threshold matter because it has no good argument to overcome this failure. Under clear Supreme Court precedent, no federal court can proceed to resolve cases based on hypothetical jurisdiction. *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (courts may not hypothesize subject-matter jurisdiction). For the Court to intervene in the current dispute regarding substitution and dismissal, it must have jurisdiction over the matter and the parties. *Id.*, at 577 ("Jurisdiction to resolve cases…requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."); *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle,* 74 U.S. 506, 7 Wall. 506, 514, 19 L. Ed. 264 (1869)) (noting existence of extensive line of cases holding that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Mintvest's Notice is a study in futility. It demands that the Court vacate the dismissal and revive this action, yet it conspicuously ignores the elephant in the room: this Court lacks subject-matter jurisdiction. Magistrate Judge López has already recommended dismissal because diversity is incomplete. *See* ECF No. 99. Mintvest does not and cannot refute this. Instead, Mintvest asks the Court to engage in a meaningless ritual. It insists that the Stipulation of Dismissal is "void" under Rule 41 because Mintvest did not sign it. But even if the Court were to indulge this baseless argument, the result would remain unchanged. The case would simply revert to its prior status— an action suffering from a fatal jurisdictional defect that mandates immediate dismissal. Accordingly, before the Court can entertain Mintvest's grievances about *how* the case was dismissed, it must determine *if* the case can exist in federal court at all. It cannot. Because subject-

matter jurisdiction is lacking, the only valid function remaining for this Court is to confirm that fact and dismiss the action. The Notice seeks to compel the Court to ignore this reality; the basic principles of subject matter jurisdiction forbid it.

### The *Rooker-Feldman* Doctrine Also Bars Plaintiff's Relief for Lack of Subject-Matter Jurisdiction

Beyond the lack of diversity that has doomed subject matter jurisdiction since the get-go, Mintvest's Notice seeks to litigate disputes over which the Court lacks subject matter jurisdiction under *Rooker Feldman*. Through the Texas Judgment, as affirmed on appeal, Mintvest held no equity in Coinmint. Because *Rooker–Feldman* is jurisdictional, the Court may take judicial notice of these decisions of the Texas courts.[3] Consequently, even if this Court had diversity jurisdiction, the *Rooker–Feldman* doctrine would still strip this Court of subject matter jurisdiction to revisit these Texas judgments. The doctrine forbids federal district courts from acting as appellate tribunals for state-court losers—*i.e.*, those who "essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments[,]" which is the essence of the remedies sought in Mintvest's post-dismissal Notice and Motion to Vacate. *See Sanchez Castro v. FDIC*, No. 15-3075 (ADC), 2018 U.S. Dist. LEXIS 59324, at *23-24 (D.P.R. Mar. 30, 2018) (internal quotation marks omitted and citing various authorities); *Mandry-Mercado v. Fingerhut-Mandry*, No. 16-2229, 2017 U.S. Dist. LEXIS 217885, at *4 (D.P.R. Jan. 26, 2017). Courts refuse both to entertain *de facto* appeals from state-court judgments and to decide issues in later suits that are inextricably intertwined with those judgments. *See Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999); *Sheehan v. Marr*, 207 F.3d 35, 40 (1st Cir. 2000); *Leavitt v. United Servs. Auto. Ass'n*,

---

[3] *See Bostwick v. 44 Chestnut St.*, No. 17-CV-12409-ADB, 2019 WL 1385113, at *3 (D. Mass. Mar. 27, 2019) (citing *Maher v. Hyde*, 272 F.3d 83, 86 n.3 (1st Cir. 2001); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.")) (deciding motion to dismiss on *res judicata* and Rooker-Feldman grounds and noting that "[t]he Court may take judicial notice of proceedings in other courts, including state courts.").

No. 4:23-cv-11341, 2024 U.S. Dist. LEXIS 9859, at *11 (D. Mass. Jan. 19, 2024). Plaintiff has not, and cannot, claim an exception that would allow this Court to bypass the doctrine.

All elements of the doctrine are met here. *First*, Mintvest lost in state court: the Texas trial court authorized the repurchase of its equity in 2021, and the court of appeals affirmed in 2024. *See* Texas Judgment (Ex. 2), Texas Affirmance (Ex. 4); *see also Sanchez Castro*, 2018 U.S. Dist. LEXIS 59324, at *24 (outlining *Rooker-Feldman* elements). *Second*, Mintvest's claims in this case and the issues it has raised depend on the premise that Mintvest still owns an equity interest, not least because the complaint demanded recognition of Mintvest's now extinguished 18.2% ownership interest (ECF 1 ¶ 16) and merger consideration (*id.* ¶¶ 18, 21-22).. Mintvest's Notice and subsequent Motion to Vacate also assume that Mintvest still has ownership and remains the real party in interest. That assumption is wrong. As established, Mintvest was divested of all right, title, and interest in the claims asserted in this action through the valid state-court execution and sheriff's sale on September 10, 2025, transferring those claims to DBM. Once that transfer occurred, Mintvest ceased to have Article III standing, suffered no cognizable injury, and lost the ability to control or object to the prosecution or dismissal of the claims. Mintvest's claims here cannot succeed unless this Court declares wrong what the Texas courts have already decided: that Mintvest's equity was repurchased and extinguished.

*Third*, the state-court judgments predate this action and were rendered well before Mintvest filed this case. *See* Texas Judgment, Ex. 2 (entered 2021); Texas Affirmance, Ex. 4 (March 2024). *Finally*, granting Mintvest's requested relief—awarding merger consideration or ordering distributions—would require this Court, either explicitly or implicitly, to conclude that the Texas courts were wrong to approve and affirm the buyout. That is precisely the kind of *de facto* appeal of issues inextricably intertwined with what the Texas courts have already decided that *Rooker–*

9

*Feldman* forbids. *See Leavitt*, 2024 U.S. Dist. LEXIS 9859, at \*11; *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 65–66 (1st Cir. 2018); *Hartlett v. Me. Hosps.*, No. 1:24-cv-00281-NT, 2024 U.S. Dist. LEXIS 163189, at \*4-5 (D. Me. Sep. 11, 2024); *Avery v. N.H. Sup. Court*, No. 23-cv-287, 2024 U.S. Dist. LEXIS 237191, at \*6 (D.N.H. Dec. 9, 2024).

In all, if Mintvest is no longer a member, its claims collapse; if it is a member, the Texas courts were wrong. This federal courthouse is not the place to relitigate that. *Rooker–Feldman* forbids using "artful pleading," a new forum, and new labels to obtain an "end-run around" what the Texas courts have finally concluded. *See Klimowicz*, 907 F.3d at 65; *Hartlett*, 2024 U.S. Dist. LEXIS 163189, at \*5. The mask has slipped. In its Notice, Mintvest explicitly asks this Court to declare the Texas Judgment "void" based on substantive legal arguments that belong in a Texas appellate brief, not a federal notice. Mintvest complains that the Texas court "failed to afford full faith and credit to the prior Delaware judgment," "violated the internal affairs doctrine," and ignored "compulsory counterclaim" rules. ECF No. 132 at 3–6. These are textbook appellate arguments. Mintvest is asking this Court to grade the Texas court's homework. That is forbidden. Whether the Texas court correctly applied the internal affairs doctrine or compulsory counterclaim rules are questions "inextricably intertwined" with the judgment itself. [4]

Mintvest's attack on the subsequent Sheriff's sale in Florida is equally misplaced. Mintvest derides the execution as a "sham sale" and argues it "could not have occurred" in Puerto Rico or Delaware. ECF No. 132 at 6. This is a collateral attack on the process of the Circuit Court for Miami-Dade County. Federal courts must accord full faith and credit to state judicial proceedings, including executions. *See* 28 U.S.C. § 1738. If Mintvest wishes to challenge the Sheriff's execution of the writ—arguing it was a "sham" or improperly noticed—it must file that motion in the Florida

---

[4] Importantly, Mintvest appealed the Texas Judgment and never raised the issues that it seeks to raise before this Court. Mintvest has not, and cannot, justify how this conscious disregard of those arguments does not constitute waiver.

court that issued the writ. It cannot ask a federal judge in Puerto Rico to audit the ministerial acts of a Florida sheriff or the decisions of the Florida courts.

### Mintvest Has No Right and No Standing to Prosecute Claims that it No Longer Owns

The lack of jurisdiction aside, Mintvest now owns nothing to litigate before this Court. That divestiture dispositively implicates two separate and critical standing principles. *First*, the divestiture defeats Article III standing: without a personal stake in the asserted claims, no injury remains for this Court to redress. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Once DBM acquired all rights to the Choses in Action, Mintvest could no longer plausibly claim any ongoing injury or entitlement to relief. Courts have consistently held that a party divested of the property or claim at issue loses Article III standing. *See, e.g.*, *TexasLDPC Inc. v. Broadcom Inc.*, No. 1:18-cv-01966-SB, 2023 U.S. Dist. LEXIS 175190, at *6 (D. Del. Sep. 29, 2023) ("If the plaintiff loses all legal ties to its interest in a case, a federal court lacks jurisdiction and must dismiss the case." (citing *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022)); *U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 335–38 (D. Mass. 2011) (providing that plaintiff lacked Article III standing to pursue claims that were released); *Hill v. Estate of Hill*, 594 F. Supp. 3d 741, 760–62 (N.D. Tex. 2022) (citing standing precedent like *Lujan* and *Spokeo*, and then concluding that plaintiff lacked standing to raise claims he released).

*Second*, the same facts also fail Rule 17's real-party-in-interest requirement and prudential standing: Mintvest cannot sue on DBM's rights. A well-founded prudential-standing limitation is that Mintvest cannot sue in federal court to enforce the rights of others. *See* Fed. R. Civ. P. 17(a) (establishing that only the real party in interest is permitted to bring an action in federal court); *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir. 2005) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)) (acknowledging that one of the "prudential aspects" of standing is "the general

prohibition on a litigant's raising another person's legal rights . . . ."). *Accord Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006); *Rawoof v. Texor Petrol. Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008) (explaining that Rule 17's real-party-in-interest requirement essentially codifies the prudential bar against suing on another's rights); *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1075–76 (10th Cir. 2009).

Courts routinely dismiss proceeding when execution or sale transfers the claim to a third party. *See RMA Ventures*, 576 F.3d at 1074–76 (dismissing appeal for lack of prudential standing where defendants purchased the plaintiff's chose in action—including appellate rights—at an execution sale); *Applied Med. Techs. v. Eames*, 2002 UT 18, ¶ 17, 44 P.3d 699, 702 (Sup.Ct.) (recognizing that "causes of action are regularly sold" and "the sale cuts off the former plaintiff's right to pursue those claims"). *Accord GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976, 980 (7th Cir. 2003) (recognizing a chose in action as intangible property and explaining that a foreclosure purchaser steps into the shoes of the prior owner and becomes the claimant); *Citizens Nat'l Bank v. Dixieland Forest Prods., LLC*, 935 So. 2d 1004, 1010–15 (Miss. 2006) (holding that a judgment creditor could levy on and buy the plaintiffs' pending lender-liability claims at a sheriff's sale and dismiss under applicable voluntary dismissal rules); *Bauer v. Sweeny*, 964 F.2d 305, 307 (4th Cir. 1992) (affirming dismissal where party rights to pursue claims were sold to a third party).

Because DBM—not Mintvest—owns the Choses in Action, it is DBM, and not Mintvest, that is the party entitled to seek dismissal of the case and sign any notice or stipulation to that end. This alone is dispositive.

### Mintvest's Misplaced Reliance on Rule 25(c) Does Not Create Jurisdiction or Revive Standing

Plaintiff desperately attempts to convert Rule 25(c)—a procedural mechanism for

substitution—into a jurisdictional prerequisite. But Rule 25(c) does not determine ownership of claims, create standing where it does not exist, or invalidate actions taken by the real party in interest, which in this case is DBM. At most, it governs the mechanics of substitution once a transfer has occurred. *See e.g.* B*ermudez v. Berrios*, No. 15-1034 (CVR), 2018 U.S. Dist. LEXIS 17840, at *10 (D.P.R. Feb. 1, 2018) (quoting *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 66 S. Ct. 242, 90 L. Ed. 185 (1946)) ("Fed. R. Civ. P. 25(a)(1) is procedural. It merely provides for 'the manner and the means by which a right to recover…is enforced by a court having venue, as well as power to decide the issues in the action, which is jurisdiction of the subject matter.'").

### DBM's Consent Satisfied Rule 41(a), and the Court Properly Entered Judgment

Rule 41(a) of the Federal Rules of Civil Procedure "provides three distinct methods whereby an action may be voluntarily dismissed." *D.C. Elecs., Inc. v. Narton Corp.*, 511 F.2d 294, 296 (6th Cir. 1975). The Rule states, in relevant part:

> (a) Voluntary Dismissal.
> (1) *By the Plaintiff.*
> (A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.
>
> […]
>
> (2) *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

As is evident from the text of the Rule, Rule 41(a)(2) requires judicial involvement: a plaintiff may dismiss an action only by obtaining a court order, issued in the court's discretion and on terms the court deems proper. Rule 41(a)(1)(A)(ii), by contrast, allows the parties themselves

13

to dismiss the case by filing a stipulation of dismissal signed by all parties who have appeared, without the need for judicial action. And Rule 41(a)(1)(A)(i) authorizes dismissal through the unilateral filing of a notice of dismissal by the plaintiff without the signature of any other party and without a court order, provided that the notice is filed before the opposing party serves an answer or a motion for summary judgment. *Scam Instrument Corp. v. Control Data Corp.*, 458 F.2d 885, 888 (7th Cir. 1972); *Miller v. Reddin*, 422 F.2d 1264, 1266 (9th Cir. 1970); *Hyde Construction Co. v. Koehring Co.*, 388 F.2d 501, 507 (10th Cir.), *cert. denied*, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

Mintvest argues that the Stipulation is "void" simply because Mintvest did not sign it, despite having no legal right over the claims that were being resolved by stipulation. Mintvest thus urges the Court to elevate form over substance and ignore the legal reality of the Sheriff's sale whereby DBM became the true party in interest in this case. Rule 41 contemplates current parties, those who hold the legal right to prosecute or defend the action. There is nothing in the text of the rule or its line of interpretative cases that suggests that a party that has been divested of its claims can hold the entire action hostage by vetoing a valid stipulation between the parties in interest to the case. It does not grant veto power to a former plaintiff divested of its claims. From the moment the Sheriff's Bill of Sale transferred all right, title, and interest in the claims set out in this action from Mintvest to DBM, Mintvest ceased to be a "party" in any meaningful sense. DBM became the "party" in relevant part as holder of the chose in action. Accordingly, when DBM signed the Stipulation, the "party" the only party with authority to act with respect to those claims, consented to its dismissal. To hold otherwise would lead to an absurdity: a party who owns nothing (Mintvest) could force a party who owns everything (DBM) to litigate claims it does not want to pursue.

Moreover, courts have repeatedly held that Rule 41(a)(1)(A)(ii) does not require rigid, literal compliance with the stipulation requirements where the assent of the parties with authority over the claims is otherwise clear from the record. *See Boran v. United Migrant Opportunity Servs., Inc.*, 99 F. App'x 64, 66–67 (7th Cir. 2004) ("literal compliance with the stipulation requirement has not been required where the agreement of all parties is apparent"); *Martin v. Larson*, No. 21-CV-412, at 3 (D. Minn. 2022) (Rule 41's "signed by all parties" language "is not always interpreted literally"); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2363 (4th ed.) (formal written stipulation unnecessary where parties agree to dismissal). For instance, "in *Boran v. United Migrant Opportunity Services, Inc.*, the court found that a letter, signed by only the plaintiff, was properly considered a stipulation for dismissal under Rule 41(a)(1)(A)(ii)," going so far as to assert that the rule does not require that every signature appear on a single document. *Boran*, 99 F. App'x at 67 ("we do not believe that the rule requires that every signature appear on a single document").

Courts further recognize that assent to dismissal need not be expressed through a single, formally executed document and may be established through representations demonstrating mutual agreement. *See Boran*, *id.*; *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 194–95 (5th Cir. 1980) (representation of settlement tantamount to stipulation under Rule 41(a)(1)(A)(ii)); *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1199 (10th Cir. 1974) (oral stipulations may satisfy Rule 41). Courts also hold that the "all parties" requirement may be met if no party objects to the dismissal. *Med. Assur. Co. v. Weinberger*, 973 F. Supp. 2d 925, 946 (N.D. Ind. 2013). And once a valid Rule 41(a)(1)(A)(ii) stipulation is filed, dismissal is self-executing and requires no court approval. *See Kleven v. Walgreen Co.*, 373 F. App'x 608, 610–11 (7th Cir. 2010); Wright & Miller, supra, § 2363.

In short, the Stipulation fully satisfied Rule 41 in both letter and spirit. Once the Sheriff's Bill of Sale transferred all right, title, and interest in the claims to DBM, DBM, and only DBM, possessed the legal authority to prosecute, settle, or dismiss those claims. Its execution of the contested Stipulation therefore reflected the consent of all true parties in interest, precisely what Rule 41 is designed to ensure. However, even if the Court were to entertain Mintvest's hyper-technical objection, Rule 41 does not demand rigid formalism divorced from reality: courts routinely look past mechanical defects to the parties' actual authority and manifest intent to dismiss. The record here leaves no doubt that the claims' owner intended dismissal and that no party with a legitimate stake objected. Rule 41 is a tool to facilitate orderly termination of actions—not a weapon for a divested, interest-less litigant to obstruct it. The Court correctly honored that reality when it entered judgment, and it should do so again by standing by its judgment.

### The Court Should Reject Plaintiff's Attempt to Collaterally Attack State Court Judgments through a Notice

Plaintiff's argument that the Stipulation is void, ineffective, or a nullity (ECF No. 132 at 2-6) because there has been no substitution and/or because Mintvest did not sign the Stipulation is a last-ditch attempt to revive this case despite Mintvest's lack of claim ownership and right to continue prosecution. Given the threshold jurisdictional issues present in this case, dismissal is the only option. Plaintiff's Notice clearly launched a collateral attack on the Texas and Florida Judgments, which extinguished its ownership interest, but deferred the issues to the Motion to Vacate. *See id.* at 3-4. Defendants, therefore, will address those matters in opposition to the Motion. For now, suffice to state that Plaintiff's contentions do not belong in a notice, and do not justify characterizing the Stipulation as a nullity simply because Plaintiff does not like the effect of a claim transfer or substitution sequence. This Court can—and should—decline to adjudicate these issues outside the proper procedural vehicle.

**WHEREFORE**, for the reasons discussed above, Defendants request that the Court deny Plaintiff's Notice of Void Notice of Dismissal (ECF No. 132).

Respectfully submitted in San Juan, Puerto Rico, on December 22, 2025.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

| | |
|---|---|
| *Attorney for DB Mtg. LLC, as Trustee* | *Attorneys for NYDIG Trust Company LLC, NYDIG Mining LLC, and Stone Ridge Holdings Group LP* |
| **DMR Law LLC**<br>Capital Center Bldg.<br>Suite 1101<br>San Juan, PR 00918<br>Tel. 787-331-9970<br>j.micheo@dmrpr.com | **CASILLAS, SANTIAGO & TORRES, LLC**<br>PO Box 195075<br>San Juan, PR 00919-5075<br>Tel.: (787) 523-3434<br>Fax: (787) 523-3433<br>ndelnido@cstlawpr.com |
| **s/Javier F. Micheo Marcial**<br>USDC-PR No. 305310 | **s/Natalia del Nido-Rodríguez**<br>USDC-PR No. 301410 |
| | **CONTINENTAL PLLC**<br>245 Alcazar Avenue<br>Coral Gables, FL 33134<br>Tel: 305-677-2707<br>JArrastia@continentalpllc.com |
| | **s/John Arrastia**<br>John Arrastia, Esq. (*Pro Hac Vice*) |